UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ELIZABETH MADRIZ, an individual; JOSE LUIS MELGOSA MADRIZ, an individual,<br><br>        Plaintiffs,<br><br>    v.<br><br>KING CITY, et al.,<br><br>        Defendants. | Case No. 5:13-CV-05096-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>**[Re: Docket Item No. 74]** |

Before this court is Defendants County of Monterey, et al.,'s ("Defendants") Motion to Dismiss Plaintiffs Elizabeth Madriz and Luis Melgosa Madriz's ("Plaintiffs") Second Amended Complaint. For the reasons stated below, Defendants' motion is GRANTED IN PART AND DENIED IN PART.

**I.   BACKGROUND**

In their Second Amended Complaint, Plaintiffs introduce a bundle of characters as Defendants. These include: King City; the King City Police Department ("KCPD"); County of Monterey; the Monterey County Sheriff's Department ("MCSD"); King City Chief of Police Nick Baldiviez; County Sheriff Scott Miller; King City Police Officer Jesus Yanez; King City Sergeant Baker; 21 individually named Monterey County Sheriff's Deputies who were members of the SWAT team; five individually named MCSD Supervisors; four individually named members of

Case No 5:13-CV-05096-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

the MCSD Gas Team; eight individually named members of the MCSD Entry Team; and ten individually named members of the MCSD Perimeter Support Team. Second Am. Compl. ("SAC"), Dkt. No. 67 at ¶¶ 6-20.

Plaintiffs allege that in April 2010 and April 2011, KCPD Officer Yanez and other officers attempted to enter Plaintiffs' home and business in search of an individual affiliated with Plaintiffs' son. SAC at ¶¶ 23-27. When Plaintiffs asked for a search warrant and learned that there was none, Plaintiffs told the officers to leave. Id. This allegedly angered Officer Yanez. Id.

In April 2012, officers of the KCPD, including Officer Yanez, allegedly submitted a search warrant application that contained false statements pertaining to criminal activities in Plaintiffs' home. Id. at ¶¶ 31-32. The KCPD allegedly requested the assistance of the MCSD to serve the search warrant for evidence of marijuana sales. Id. at ¶¶ 31, 34-35, 43. At 1:00 a.m. on April 18, 2012, prior to serving the warrant, MCSD supervisors and officers allegedly gathered at KCPD to discuss the operation of serving the warrant at Plaintiffs' home. Id. at ¶ 34. At approximately 3:30 a.m., officers of MCSD and KCPD, and an armored truck mounting an automatic weapon, allegedly went to Plaintiffs' home. Id. at ¶ 35. Plaintiff Mr. Madriz heard the noise outside his home and looked outside at the law enforcement vehicles. Id. at ¶ 36. There were others in the home with Plaintiff Mr. Madriz: Plaintiff Ms. Madriz, their 16-year-old son Jorge, their 19-year-old son Julio, and Julio's girlfriend. Id. at ¶ 42.

Without notice, the MCSD Supervisors allegedly allowed or ordered the MCSD Gas Team to fire three rounds of tear gas, or similar noxious agent, into Plaintiffs' home. Id. at ¶¶ 40-41. The MCSD Supervisors and the MCSD Entry Team allegedly forced their way into Plaintiffs' home. Id. at ¶¶ 48, 50. Officers of the MCSD Entry Team forced Plaintiffs to the ground and forcibly placed their knees onto Plaintiffs' backs. Id. at ¶¶ 49, 52-53. Plaintiffs told the officers that Plaintiff Mr. Madriz had a bad back and had had surgery on it, yet the officers allegedly exerted more force on Plaintiff Mr. Madriz causing great pain and severe damage to his spine. Id. at ¶ 54-55. As a result of this, Plaintiff Mr. Madriz has allegedly suffered additional harm and is

2
Case No 5:13-CV-05096-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

barely able to walk with the assistance of a cane. Id. at ¶ 57. The MCSD Entry Team allegedly yanked Plaintiff Mr. Madriz to his feet, and removed Plaintiffs outside of the house where they were made to stand on the sidewalk in their nightwear and without shoes in 47-degree weather. Id. at ¶ 58-59. Plaintiffs allegedly stood on the sidewalk for over 30 minutes, and were then placed in police cars where they waited for an additional two-and-a-half hours before they were taken to the KCPD. Id. at ¶ 60. They were questioned for about four hours, and were then locked in cells at the King City Jail. Id. at ¶¶ 60, 62, 68. KCPD Officer Yanez allegedly told Plaintiff Ms. Madriz that while the warrant was only for Julio, he arrested everyone. Id. at ¶ 69.

After the home was cleared, members of the MCSD Perimeter Support Team allegedly broke into Plaintiffs' garage for access, causing damage. Id. at ¶ 66. At about 4:45 a.m., SWAT allegedly debriefed at the Sheriff's South County Station in King City, where there was no determination by the MCSD Supervisors that any MCSD officer had acted improperly. Id. at ¶ 61. When Plaintiffs returned home, they allegedly discovered that $6,000 was missing. Id. at ¶ 70. Because of this, Plaintiffs were unable to pay the rent on their business and eventually lost their business. Id.

Plaintiffs allegedly requested return of their property, but were not granted a post-deprivation hearing. Id. at ¶ 71. In May 2012, Plaintiff Ms. Madriz allegedly filed a second Internal Affairs Complaint against KCPD and Officer Yanez, but later learned that the officers' actions were compliant with the department's policies and practices. Id. at ¶ 72. In August 2013, Plaintiff Ms. Madriz filed a complaint with the State of California. Id. at ¶ 73. Then, Plaintiffs allegedly filed a timely tort claim form with King City, but King City did not respond. Id. at ¶¶ 74-75.

Plaintiffs commenced the instant action on October 31, 2013. See Dkt. No. 1. Plaintiffs filed a First Amended Complaint in March 2014. See Dkt. No. 44. Defendants filed a motion to dismiss, which this court granted on May 9, 2014 with leave to amend. See Dkt. No. 65. Plaintiffs filed a Second Amended Complaint on May 23, 2014. See Dkt. No. 67. Defendants

3
Case No 5:13-CV-05096-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

County of Monterey filed the instant Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).[1]  See Dkt. No. 74.  Plaintiffs opposed the motion, and Defendants replied.  See Dkt. Nos. 82, 83.  Oral argument was held on September 19, 2014.

In their Second Amended Complaint, Plaintiffs present the following claims: (1) against Defendants King City and Monterey County Sheriff's Office for violation of 42 U.S.C. § 1983 under Monell liability; (2) against Officer Yanez, MCSO Entry Team, MCSO Gas Team, and MCSO Perimeter Support Team for violation of the Fourth Amendment under section 1983; (3) against Yanez and Baker for violation of the First Amendment freedom of speech and association under section 1983; (4) against Sheriff Miller and Chief Baldiviez for ratification under section 1983; (5) against KCPD and MCSD Supervisor Defendants, MCSD Gas Team, MCSD Entry Team, MCSD Perimeter Support Team, and Officer Yanez for violation of 42 U.S.C. § 1981; (6) against KCPD and MCSD Supervisory Defendants, MCSD Gas Team, MCSD Entry Team, MCSD Perimeter Support Officers and Officer Yanez for violation of 42 U.S.C. § 1985; (7) against KCPD and MCSD Supervisor Defendants, MCSD Gas Team, MCSD Entry Team, MCSD Perimeter Support Team Officers and Officer Yanez for violation of 42 U.S.C. § 1986; and (8) a collection of state causes of action that includes various tort claims, violations of California statutes pertaining to civil rights, and injunctive relief.  SAC at ¶¶ 77-210.

## II.    LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss for failure to state a claim, the complaint is construed in the light most favorable to the non-moving party, and all material allegations in the complaint are taken to be true.  Sanders v. Kennedy, 794 F.2d 478, 481 (9th Cir. 1986); see Fed. R. Civ. P. 12(b)(6).  This rule does not apply to legal conclusions—"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).  While a complaint does not need detailed factual

---

[1] Only Defendants County of Monterey filed and argued its Motion to Dismiss.  King City was not a party to the instant motion.

4
Case No 5:13-CV-05096-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

allegations to survive a 12(b)(6) motion, plaintiffs must provide grounds demonstrating their entitlement to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, the plaintiff must allege sufficient factual allegations "to raise a right to relief above the speculative level." Id. This threshold is reached when the complaint contains sufficient facts to allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Iqbal, 556 U.S. at 678.

### III.   DISCUSSION

Defendants' Motion to Dismiss pertains only to those claims involving County of Monterey, not King City. Its motion is based on Plaintiffs' failure to state a claim.

### A.   Section 1983 Claims

42 U.S.C. § 1983 does not confer substantive rights, but only provides an avenue by which plaintiffs may seek relief for the deprivation of rights conferred elsewhere in federal law. Graham v. Connor, 490 U.S. 386, 393-94 (1989). The plain language of the statute necessitates that plaintiffs name the federal right of which they were deprived. Gomez v. Toledo, 446 U.S. 635, 640 (1980). Thus, for a proper section 1983 claim, the plaintiff must: (1) "allege that some person has deprived him of a federal right," and (2) "allege that the person who has deprived him of that right acted under color of state or territorial law." Id.

Plaintiffs assert section 1983 claims for the violation of their Fourth Amendment right against illegal seizure and excess force; for liability under Monell; and against Sheriff Miller under a ratification theory. SAC at ¶¶ 77-96, 102, 111.

#### 1.   Eleventh Amendment Immunity

Defendants briefly raise Eleventh Amendment immunity, but fail to discuss it in their motion brief. See Dkt. No. 74 at 1. Nonetheless, it is necessary to briefly address Eleventh Amendment immunity as a threshold issue.

A suit against state officials acting in their official capacity is treated as a suit against the state. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). The Eleventh Amendment provides

immunity to states from suits in federal court by private persons for damages, unless the state has waived its sovereign immunity and consented to suit. Alabama v. Pugh, 438 U.S. 781, 782 (1978); U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizen of another State, or by Citizens or Subjects of any foreign state."). "Where state officials are named in a complaint which seeks damages under [section 1983], it is presumed that the officials are being sued in their individual capacities." Shoshone-Bannock Tribes v. Fish & Game Comm'n, Idaho, 42 F.3d 1278, 1284 (9th Cir. 1994).

Here, Plaintiffs name individual Defendants in their individual capacities. See SAC at ¶¶ 8-20. Because Defendants fail to argue otherwise, there is no Eleventh Amendment bar. As such, this court will now proceed with each of the claims disputed by Defendants.

### 2. Fourth Amendment Violation

For a section 1983 claim under the Fourth Amendment for the use of excessive force, a standard of reasonableness applies: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397. Factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. To allege a claim for an unlawful seizure, the arrest must have been made without probable cause. Lacey v. Maricopa Cnty., 693 F.3d 896, 918 (9th Cir. 2012). "Probable cause exists when there is a fair probability or substantial chance of criminal activity." Id. (quoting United States v. Bishop, 264 F.3d 919, 924 (9th Cir. 2001)).

A person deprives another of a constitutional right within the meaning of section 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988). The inquiry into causation must be individualized

6
Case No 5:13-CV-05096-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. See id. (citations omitted). Plaintiff must "set forth specific facts as to each individual defendant's" actions which violated his right. Id. at 634.

Defendants argue that Plaintiffs fail to identify individual Defendants who committed specific acts and fail to state how those specific acts constitute a violation of any constitutionally protected right. Dkt. No. 74 at 10. Defendants also argue that Plaintiffs rely solely on conclusory statements. See id. at 11.

     i. *Identifying Individual Defendants Who Committed Specific Acts*

Plaintiffs make allegations against the MSCO Gas Team (composed of four individuals)[2] and MCSD Entry Team (composed of eight individuals). FAC at ¶¶ 88, 91-92, 94. While Plaintiffs include the MCSO Perimeter Support Team in the caption of the claim, there are no allegations against that particular Team under the claim. Id. at 15. Plaintiffs allege that the MSCO Gas Team fired the tear gas into Plaintiffs' home; and the MSCD Entry Team broke open the front door, ordered Plaintiffs to get down, and placed their knees onto Plaintiff Mr. Madriz's back. Id. at ¶¶ 88, 91-92, 94. To the extent that Plaintiffs identified the "teams" earlier in the complaint and that these teams are composed of Monterey County officers, Plaintiffs have alleged sufficient facts to identify the individuals who committed these specific acts.

     ii. *Specific Acts Constituting a Violation of a Constitutionally Protected Right*

In considering the factors laid out by Graham v. Connor, Plaintiffs' allegations sufficiently plead that the officers' actions were not objectively reasonable. See Graham, 490 U.S. at 396-97. Defendants allegedly went to Plaintiffs' home in the middle of the night to serve a search warrant for evidence of marijuana sales; when Defendants arrived, Plaintiffs did not have a weapon;

---

[2] At the beginning of the complaint, Plaintiffs identify the team as the "MCSD Gas Team," for Monterey County Sheriff's Department. FAC at ¶ 19. Under the claim, however, Plaintiffs identify the team as the "MCSO Gas Team," presumably for Monterey County Sheriff's Office. Id. at ¶ 88.

7
Case No 5:13-CV-05096-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

without providing notice, the MCSO Gas Team fired tear gas into the home; and the MCSD Entry Team forced Plaintiffs to the ground and put their knees on Plaintiffs' backs. FAC at ¶¶ 35, 37, 40, 49. There are no allegations that Plaintiffs posed an immediate threat to the safety of the officers or actively resisted arrest. Plaintiffs have alleged sufficient facts of acts that constitute a violation of the Fourth Amendment. Accordingly, Defendants' motion to dismiss this claim is DENIED.

### 3. *Monell* Liability

Defendants' oppose the section 1983 claim asserted under a Monell theory of liability. See Dkt. No. 74 at 9. Defendants argue that while Plaintiffs have divided the names of the officers into groups, Plaintiffs have still failed to identify actual Defendants doing specific acts and linking those Defendants' acts with specific violations of constitutionally protected rights. Id. at 9-10. Moreover, Defendants argue that Plaintiffs have failed to allege repeated behavior on the part of Defendants that would constitute a custom arising to liability. Id. at 10.

In Monell v. New York City Department of Social Services, 436 U.S. 658, 694 (1978), the Supreme Court held that a "local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. Thus, "[t]o create liability under [section] 1983, the constitutional violation must be caused by a policy, practice, or custom of the entity, or be the result of an order by a policy-making officer." Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1139 (9th Cir. 2012) (internal quotations and citations omitted). The Ninth Circuit stated that a "policy" is "a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in questions." Id. at 1143 (internal quotations and citations omitted). There are two types of policies: (1) the policy of action is where "the municipality itself violate[s] someone's constitutional rights or instruct[s] its

8
Case No 5:13-CV-05096-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

employees to do so;" and (2) the policy of inaction, or omission, is where the municipal is responsible "for a constitutional violation committed by one of its employees" and the "municipality did not direct the employee to take the unconstitutional action." Id. The policy of omission includes "the acts of policymaking officials" and "practices so persistent and widespread as to practically have the force of law." Id. at 1144.

Here, Plaintiffs allege that the MCSD had an expressly adopted official policy or longstanding practice or custom to conduct warrantless and unreasonable detentions, seizures, and arrests of persons who had no criminal allegations against him. SAC at ¶ 80. They allege that the MCSD supervising defendants planned the action, approved the plan, and reviewed the operation after it had concluded. Id. at ¶ 81. Plaintiffs further allege that the totality of the violations alleged set forth a policy or practice to deprive citizens of constitutional protections, and that these Defendants failed to supervise and train, and did not enforce their own policies. Id. at ¶ 82-84.

At oral argument, Plaintiffs argued that the alleged policy consists of using projectile weapons as a preemptive method, such as the decision to use tear gas without facing a threat. They further argued that the MCSD supervisors post-incident debriefing approving the conduct of law enforcement during the incident is an admission that a policy existed.

Plaintiffs' arguments are unpersuasive. They do not sufficiently allege what the policy is and do not allege how any decisions or actions taken by Defendants reflect a "policy or custom" that is so persistent and widespread so as to constitute the force of law. Rather, it seems that there was a plan to execute this particular operation, and at the post-incident debriefing the MCSD supervisors told officers that the plan was followed. There is no indication of an actual department-wide policy. Plaintiffs' allegations consist of conclusory statements that are not sufficient to plead this claim. Accordingly, Defendants' motion to dismiss this claim is GRANTED.

    4.    Ratification

Defendants argue that Plaintiffs' claims are unsupported by factual allegations which are

9
Case No 5:13-CV-05096-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

not sufficient to state a claim. Dkt. No. 74 at 11. They also argue that Plaintiffs do not link any specific harm to any specific act of any identified Defendant. See id.

The Ninth Circuit has stated that "[a] municipality . . . can be liable for an isolated constitutional violation if the final policymaker 'ratified' a subordinate's actions." Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999). To show ratification, a plaintiff must allege that the authorized policymaker knew of the constitutional violation and approved the subordinate's decision. Lytle v. Carl, 382 F.3d 978, 987 (9th Cir. 2004). Identifying the official policymaker is a question of state law, which can include local ordinances and regulations. St. Louis v. Paprotnik, 485 U.S. 112, 118 (1988).

Here, Plaintiffs allege that Sheriff Miller and Chief Baldiviez are the heads of their respective agencies. See SAC at ¶ 8-9. Plaintiffs also allege that they knew or should have known of the operation; that they participated in the planning and execution of the constitutional violations against Plaintiffs; and that they were part of the post-incident reviews. Id. at ¶105-06. Plaintiffs allege that these Defendants ratified Defendants' actions by taking no steps to change/review any policy or practice, and in fact made statements that their officers acted properly. Id. at ¶ 107.

Plaintiffs have not sufficiently pled this claim. This claim suffers from the same deficiency as the previous claim in that there is no policy that has been sufficiently pled. Accordingly, Defendants' motion to dismiss this claim is GRANTED.

**B.  Section 1981 Claim**

Defendants argue that Plaintiffs failed to identify any specific Monterey Defendants, failed to identify what specific acts any Monterey Defendants did, and failed to establish any affirmative link between any identified Monterey Defendants and any specific acts, which caused the injuries Plaintiffs complain of. See Dkt. No. 74 at 12. Defendants rely on a decision by the U.S. District Court in Arizona where the court dismissed the complaint because the plaintiff failed to identify any individual officers and instead made blanket allegations that the collective multitude of

10
Case No 5:13-CV-05096-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

officers violated his civil rights. See id.

42 U.S.C. section 1981(a) states in pertinent part: "[a]ll persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment." "To state a claim pursuant to section 1981, a plaintiff must allege (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute." Keum v. Virgin Am., Inc., 781 F. Supp. 2d 944, 954 (N.D. Cal. 2011).

Here, Plaintiffs allege that they are members of a racial minority because they are Hispanic. See SAC at ¶ 114. Plaintiffs further allege that because Hispanics in King City are generally apprehensive about contact with the police and are, thus, unlikely to complain or exercise their civil rights, Defendants took advantage of Plaintiffs because they were unlikely to resist Defendants' alleged coercive and threatening activities. Id. at ¶ 115-16.

However, in their SAC, Plaintiffs allege that they did complain and exercise their civil rights. When Officer Yanez of the KCPD approached Plaintiffs beginning in 2010, Plaintiffs asked for a search warrant and turned the Officer away when they learned that there was no search warrant. Id. at ¶¶ 23-30. Moreover, at oral argument, Plaintiffs argued that this claim pertained to Hispanics who have "immigration status" concerns and who, as a result, are taken advantage of by law enforcement. Given that these Plaintiffs do not have "immigration status" concerns nor have demonstrated that they have been apprehensive about exercising their rights, they have not sufficiently pled this claim. Accordingly, Defendants' motion to dismiss this claim is GRANTED.

**C.     Section 1985 Claim**

Defendants argue that the allegations are conclusory because there is no reference to any specific officer, or to any conduct of any specific officer. See Dkt. No. 74 at 12. Defendants, thus, argue that Plaintiff's assertions are not sufficient to state a claim. See id. at 13.

A viable section 1985 claim can only exist along with a cognizable section 1983 claim. See Caldeira v. County of Kauai, 866 F.2d 1175, 1182 (9th Cir. 1989). To bring a section 1985 claim, a plaintiff must allege (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).

Plaintiffs allege the specific Defendant groups involved, and allege the deprivation of property under the Fifth Amendment when Defendants Yanez and/or MCSD Entry Team took money from Plaintiff's home. See SAC at 22, ¶ 129. Plaintiffs allege that prior to the operation, Defendants conspired, discussed and agreed what they were going to do. Id. at ¶ 130. At oral argument, Plaintiffs clarified that the allegations of conspiracy pertain to officers within the MCSD and to the deprivation of Plaintiffs' civil rights.

Plaintiffs have not sufficiently pled a conspiracy between officers of the MCSD. The fact that they met to plan and execute an operation does not indicate that there was a conspiracy to violate Plaintiffs' civil rights. Accordingly, Defendants' motion to dismiss this claim is GRANTED.

**D.     Section 1986 Claim**

Section 1986 creates liability for neglecting to prevent a section 1985 offense from being committed when it is within the person's power to do so. 42 U.S.C. § 1986; RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1054 n.5 (9th Cir. 2002). To state a claim under section 1986, a plaintiff must first allege conduct falling within the scope of section 1985. Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 626 (9th Cir. 1988).

Given that Plaintiffs' section 1985 claim is dismissed due to insufficient pleading, so too is Plaintiffs' section 1986 claim that is contingent to a valid section 1985 claim. Thus, defendant's motion as to this claim is GRANTED.

12
Case No 5:13-CV-05096-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

### E. Injunctive Relief

Defendants argue that because Plaintiffs' claims are based on conclusory allegations and have failed to identify any acts done by any specific Monterey Defendants, and have further failed to link any specific facts to constitute a claim upon which relief can be granted, then basing another cause of action on those allegations must also fail to constitute a claim upon which relief can be granted. See Dkt. No. 74 at 13.

An injunction is a "remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted." Shell Oil Co. v. Richter, 52 Cal. App. 2d 164, 168 (1942); see also Art Movers, Inc. v. Ni West, Inc., 3 Cal. App. 4th 640, 646 (1992). "[T]he basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982). Moreover, in deciding whether to grant a preliminary injunction, a district court must consider whether the plaintiffs have demonstrated that they are likely to prevail on the merits. See, e.g., Doran v. Salem Inn, Inc., 422 U.S. 922, 931 (1975).

Plaintiffs allege that because they continue to reside in King City and because of the retaliation and harassment they have suffered at the hands of the police department, Plaintiffs are at risk of additional harassment and retaliation. See SAC at ¶ 198. Plaintiffs allege that there is no adequate remedy at law for the injuries currently being suffered or that are threatened as it will be impossible for Plaintiffs to determine the precise amount of damages that they will suffer if Defendants are not restrained. Id. at ¶ 200.

Injunctive relief is not a claim, but a form of relief. Moreover, injunctive relief is not a proper remedy in this case. Plaintiffs fail to allege facts explaining why monetary damages would be an inadequate remedy and their explanation on irreparable injury is insufficient. Plaintiffs' claim for injunctive relief is fatally defective and, accordingly, is DISMISSED WITHOUT LEAVE TO AMEND.

## IV. CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss is GRANTED IN PART AND DENIED IN PART. In sum:

1. Plaintiffs' section 1983 claim against the County of Monterey for the violation of their Fourth Amendment rights may proceed.
2. Plaintiffs' injunctive relief claim is DISMISSED WITHOUT LEAVE TO AMEND.
3. All other claims against the County of Monterey are DISMISSED WITH LEAVE TO AMEND.
4. All claims against King City may proceed.

Plaintiffs have leave to amend and can file their third amended complaint addressing the deficiencies stated herein no later than 30 days from the date of this order.

The court schedules this case for case management conference at 10:00 a.m. on November 14, 2014. Parties shall file a joint case management conference statement on or before November 7, 2014.

**IT IS SO ORDERED.**

Dated: September 23, 2014

EDWARD J. DAVILA
UNITED STATES DISTRICT JUDGE